# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

MARK BRUNING,                          )
                                       )
            Plaintiff,                 )
vs.                                    )          NO.  CIV-15-0003-HE
                                       )
CITY OF GUTHRIE, OKLAHOMA,             )
ET AL.,                                )
                                       )
            Defendants.                )

## ORDER

Plaintiff Mark Bruning filed this action in state court against the City of Guthrie ("City"), Sereniah Breland, the City Manager, Jim Ahlgren, the City Human Resources Director, Damon Devereaux, the former City Police Chief, Gary Haddock a City police officer, Jonathan Williams, a City police officer, Kyle White ("White"), Jill Ochs Tontz ("Tontz"),[1] an assistant district attorney, and Ann Griffin ("Griffin"), a state senator for Logan County, alleging claims under both federal and state law.  Plaintiff also seeks to enforce an arbitration decision.  The action was removed and all defendants have filed motions to dismiss.[2]

When considering whether a plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party.

---

[1] *Ms. Tontz is now married to defendant White, but the court will refer to her as defendant Tontz to avoid confusion.*

[2] *Two of the motions are partial motions to dismiss.*

S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014); Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009).  All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The complaint must, though, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  As explained by the Tenth Circuit, the Twombly/Iqbal pleading standard "'is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'"  Id. at 640-41 (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir.2012)). Considering plaintiff's claims under this standard, the court concludes the City's motion should be granted in part and denied in part and the remaining defendants' motions should be granted.

## Background

Plaintiff alleges in his complaint[3] that he has been employed by the City of Guthrie since 1995, initially as a dispatcher and then as a police officer.  As a police officer, he has been a member of the bargaining unit represented by Fraternal Order of Police Lodge 105

---

[3]*Although the initial pleading is a petition because it was filed in state court, it will be referred to as a complaint.*

("FOP Lodge #105"), which is a party to a collective bargaining agreement ("CBA") with the City of Guthrie. Plaintiff claims he met Heather White ("Heather"), the former spouse of defendant Kyle White, through his job and they became friends, but nothing more, until after her divorce on July 19, 2012. At that time, he asserts he and Heather established a quasi-marriage type relationship and, sometime in July, he and Heather became formally engaged.[4]

Plaintiff alleges that, after Heather's divorce, Kyle White and his family began to attempt to interfere with his relationship with Heather and that defendant Tontz "conspired with Defendant Kyle White to continue to interfere" with it. Plaintiff claims White and Tontz communicated with defendant Griffin during this period and convinced her that plaintiff was harassing White because of his association with Heather.

Plaintiff alleges that on September 7, 2013, he was supervising City police officers assigned to control crowds at an outdoor concert in Guthrie. He claims he was in the process of directing the crowd away from an exit reserved for emergencies and handicapped persons when White, Tontz, and Griffin approached. He asserts that White, instead of complying with his order to exit elsewhere, verbally accosted him and began arguing with him. Plaintiff alleges that he could smell alcohol on White and, in light of that, White's refusal to follow his orders and his other behavior, directed another officer to arrest White for being under the

---

[4]*In a response brief plaintiff states that he and Heather White were married on September 28, 2013. As that fact could affect whether the relationship between plaintiff and Ms. White was entitled to constitutional protection at the time of the alleged actions of defendants, it is unclear why it was not included in the complaint.*

influence of alcohol.

Plaintiff alleges that Griffin and Tontz became angry at White's arrest and threatened retribution. Griffin allegedly told those present that she was going to use her position as a state senator and call the chief of police and get plaintiff fired. Plaintiff asserts that between September 7 and September 9, 2013, White, Tontz and Griffin repeatedly sought to contact City Manager Breland and Chief of Police Devereaux regarding plaintiff and complained to them about White's arrest. He claims they "engaged in conduct which reflect agreement and concerted action on a plan to intentionally interfere with the relationship (quasi-marriage) between Mark Bruning and Heather White." Doc. #1-2, p. 10. He alleges Breland and Devereaux agreed to pursue employment actions against plaintiff, knowing they would cause financial hardship and stress within plaintiff's family "and thus satisfy the demands of Defendants Kyle White, Jill Ochs Tontz and/or A.J. Griffin and thereby unduly burden[] Plaintiff's relationship and/or effect[] an unwarranted intrusion into that relationship." Doc. #1-2, p. 11. To carry out the proposed plan, plaintiff claims Breland and Devereaux contacted defendant Jim Ahlgren, who "thereafter joined and participated in the conspiracy by engaging in conduct that he knew or should have known, would interfere with the relationship between Mark Bruning and Heather White." *Id.*

Plaintiff alleges that a series of acts occurred after White's arrest, all of which were steps taken in furtherance of the conspiracy. He claims Devereaux conducted an internal investigation, placed him on administrative leave and instructed him not to enter any City-owned property without authorization from the City Manager. On October 4, 2013,

4

Devereaux issued a report regarding his investigation, concluding that plaintiff had "acted out of emotion and overused his authority to detain Kyle White." *Id.* at p. 16. Plaintiff asserts that, based on that finding, Devereaux convened a formal Disciplinary Review Board. The Board, comprised of defendants Ahlgren, Haddock and Williams, issued a recommendation for plaintiff's discharge on October 17, 2013, which Devereaux accepted. He then sent the matter to Breland, who issued a letter on October 21, 2013, in which he concurred with the findings and recommendation of the Board and Devereaux and terminated plaintiff's employment.

Plaintiff, through his collective bargaining agent, then initiated a grievance of his discharge on October 25, 2013. After defendant Breland issued a final decision denying it, FOP Lodge #105 invoked arbitration on behalf of plaintiff. Plaintiff alleges that the arbitrator issued a final and binding arbitration award sustaining the grievance in part and directing that plaintiff be retroactively reinstated to his former position. Plaintiff asserts that, although the City did not appeal the award, it has refused to reinstate him. As will be discussed subsequently, after plaintiff filed his complaint in this action, the City filed an action in state court seeking to vacate the arbitration award.

Claims

Plaintiff asserts eight causes of action in his complaint. In his first cause of action, he seeks to enforce the arbitration award against the City of Guthrie. In his second cause of action, asserted under 42 U.S.C. § 1983, plaintiff alleges all defendants conspired to interfere with his right to freedom of intimate association in violation of the First, Fifth and Fourteenth

Amendments. In his third cause of action, plaintiff asserts a substantive due process claim against the City under § 1983. In his fourth cause of action, plaintiff asserts a deprivation of liberty claim under § 1983 against Breland, Devereaux, Ahlgren and the City, based on his being barred, since September 12, 2013, by Devereaux from entering City-owned properties without authorization from the City Manager. In his fifth cause of action, plaintiff asserts a deprivation of substantive due process claim under §1983 against the City for failing to reinstate him. In his sixth cause of action, plaintiff asserts a deprivation of procedural due process claim under § 1983 against Breland, Devereaux, Ahlgren, Haddock, Williams and the City of Guthrie based on his pretermination proceedings, including the hearing conducted by the Disciplinary Review Board. In his seventh cause of action, plaintiff asserts a claim under state law against White, Tontz, Griffin, Haddock and Williams for intentional interference with his employment or business relationship with the City of Guthrie. In his eighth cause of action, plaintiff asserts Breland, Devereaux, Ahlgren, Haddock, and Williams deprived him of his liberty and property interests without due process in violation of his rights under the Oklahoma Constitution.

Analysis

City's Partial Motion to Dismiss

The City of Guthrie has filed a partial motion to dismiss, seeking the dismissal of plaintiff's first, second, third, and fifth causes of action.

First Cause of Action – Arbitration Award

The City initially argues that plaintiff's claim seeking to enforce the arbitration award

should be dismissed because plaintiff is not the proper party to enforce it. It asserts that, although plaintiff cites both the Oklahoma Fire and Police Arbitration Act ("FPAA") and the Oklahoma Arbitration Act ("OAA") in the complaint in support of his claim, he does not identify any provision of the FPAA that allows someone in his position – who was neither a party to the arbitration proceeding nor to the underlying collective bargaining agreement – to bring an action to enforce the arbitrator's decision. Citing 12 Okla. Stat. §1855(D), the City also contends the OAA expressly provides that it does not apply to collective bargaining agreements. Even if plaintiff could enforce the decision, the City urges the court to abstain under Younger v. Harris, 401 U.S. 37 (1971). The City states that, contrary to what plaintiff pleaded in the complaint, it did file a petition in Logan County District Court (Case No. CJ-2014-269), seeking to have the arbitration decision vacated.

Plaintiff responds that he clearly has standing to enforce the award. He asserts that the FPAA requires Oklahoma police and firefighters to negotiate collective bargaining agreements with their employers that address the terms and conditions of their employment and that, as an employee, he is a third party beneficiary of the collective bargaining agreement, who has a right to enforce its provisions. He further asserts that, although judicial enforcement of arbitration awards is not expressly authorized by the FPAA, the Oklahoma courts have recognized a limited right to review arbitration awards.

The court agrees with plaintiff that, at least in this type of situation, he has standing as a third-party beneficiary of the collective bargaining agreement to seek to enforce the arbitration award. *See* City of Houston v. Williams, 353 S.W.3d 128, 148 (Tex. 2011)

("Significantly, collective bargaining agreements are recognized as a type of third-party beneficiary contract."); *see* Restatement (Second) of Contracts § 302 cmt. d, illus. 14 ("A, a labor union, enters into a collective bargaining agreement with B, an employer, in which B promises not to discriminate against any employee because of his membership in A. All B's employees who are members of A are intended beneficiaries of the promise."); *see generally* 15 Okla. Stat. § 29 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."); Fraternal Order of Police, Lodge 142 v. City of Perkins, 146 P.3d 829, 830 (Okla. Civ. App. 2006) ("The Police Lodge and Hankins filed an action to enforce the arbitrator's award in district court.").

The City's argument that only the FOP can seek to enforce the award is not persuasive. The case it cites, Wilcoxson v. Tackett, 41 P.3d 1024, 1028 (Okla.Civ.App. 2002), is distinguishable. There the court was presented with the issue of whether an individual employee had the right to demand arbitration. As the court explained,"'the right to arbitrate under a collective agreement is not ordinarily a right incident to the employer-employee relationship, but one which is incident to the relationship between employer and union. Under the collective agreement between the parties, it was the union which had the right to take grievances to arbitration, not the individual employees.'" *Id*. at 1027 (quoting Black-Clawson Co., Paper Mach. Div. v. Int'l Ass'n of Machinists Lodge 355, Dist. 137, 313 F.2d 179, 184 (2d Cir. 1962)). The right to invoke arbitration is different from suing to enforce an arbitration award. Police officers have routinely joined with the FOP in the Oklahoma courts in actions seeking judicial enforcement and review of

arbitrators' awards.  *E.g.,* City of Owasso v. Fraternal Order of Police, Lodge No. 149, 336

P.3d 1023 (Okla. Civ. App. 2014); City of Perkins, 146 P.3d at  830.   In the absence of a

statutory or contractual bar, the court can discern no reason why plaintiff cannot file suit to

enforce the award on his own.   The more pertinent question is whether the court should

abstain, pursuant to Younger, from considering the issue because of the pending lawsuit in

Logan County District Court.

Under Younger

[a] federal court must abstain from exercising jurisdiction when: (1) there is
an ongoing state criminal, civil, or administrative proceeding, (2) the state
court provides an adequate forum to hear the claims raised in the federal
complaint, and (3) the state proceedings "involve important state interests,
matters which traditionally look to state law for their resolution or implicate
separately articulated state policies."[5]

Brown ex rel. Brown v. Day, 555 F.3d 882, 887 (10th Cir. 2009) (quoting Amanatullah v.

Colo. Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir.1999)).   "[A]bstention 'is the

exception, not the rule,' and hence should be 'rarely ... invoked, because the federal courts

have a virtually unflagging obligation ... to exercise the jurisdiction given them.'"   *Id. at 888*

(quoting Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992)).   Nonetheless, if the three

conditions are met, Younger abstention is "'non-discretionary ... absent extraordinary

circumstances.'"  *Id.* (quoting Ankenbrandt, 187 F.3d at 1163).

As explained by the court in Brown, "Younger originally sought to prevent federal

---

[5]*The Tenth Circuit and other courts "have abridged the third prong of the Younger inquiry, asking only whether the state interest is important."  Brown ex rel. Brown v. Day, 555 F.3d 882, 894 n.10 (10th Cir. 2009).*

courts, sitting in equity, from enjoining state prosecution of criminal defendants." *Id.* at 889-90. The Supreme Court has since expanded the <u>Younger</u> abstention doctrine to state civil enforcement cases and state administrative agency proceedings. The problem with the City's position is the lawsuit to which the City asks this court to defer, <u>City of Guthrie v Fraternal Order of Police Lodge #105</u>, No. CJ-2014-269, does not satisfy the first prong of the <u>Younger</u> inquiry as it is not a "state criminal, civil [enforcement],[6] or administrative proceeding." <u>Brown</u>, 555 F.3d at 887.

<u>Younger</u> has occasionally been applied to other types of lawsuits. The Supreme Court invoked the doctrine in <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1 (1987) and the Tenth Circuit noted in <u>Morkel v. Davis</u>, 513 Fed. Appx. 724, 728 (10th Cir. 2013) that it and "other circuits have consistently applied <u>Younger</u> to child custody cases." Those cases, however, (and every case in which <u>Younger</u> has been applied) all involved important state interests. *E.g.,* <u>Pennzoil</u> (state civil proceedings implicated State's interest in enforcing its courts's orders and judgments); <u>Crown Point I, LLC v. Intermountain Rural Elec. Ass'n</u>, 319 F.3d 1211, 1215 (10th Cir. 2003) ("[T]here is little doubt that eminent domain proceedings implicate important state interests and are matters which traditionally look to state law for their resolution.") (internal quotation marks omitted); <u>Morkel</u>, 513 Fed.Appx. at 729 ("[T]he resolution of child custody matters has been acknowledged as an important state interest.").

---

[6]*In <u>Sprint Commc'ns, Inc. v. Jacobs</u>, ___ U.S. ___, 134 S.Ct. 584 (2013), the Supreme Court described civil enforcement proceedings as actions which are "characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." Id. at___, 134 S.Ct. at 592.*

In contrast, the City of Guthrie has failed to demonstrate that the Logan County lawsuit involves any important state interest. Without citing any authority, it merely asserts that "the State of Oklahoma has an important interest in seeing to it that the collective bargaining agreement is properly enforced as to the parties to the agreement and the arbitration proceeding." Doc. #16, p. 7. The court would agree that Oklahoma has a general interest in collective bargaining agreements and arbitration. However, the Logan County action is essentially a contract dispute which pertains to only one person and one interpretation of a collective bargaining agreement. The state does not have the "substantial, legitimate interest" in such a dispute that is required for the court to abstain from exercising its jurisdiction. *See, e.g.,* New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 365 (1989) ("[T]he regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States.") (internal quotation marks omitted). Thus the third prong of the Younger test has not been met.

And there is another reason why abstention is not warranted. Plaintiff is not a party to the state litigation. Contrary to the City's assertion, the FOP cannot pursue any relief to which plaintiff may be entitled. While it can represent his interests as to the arbitration matter, it cannot assert § 1983 claims on his behalf.

In Sprint Commc'ns, Inc. v. Jacobs, ___ U.S. ___, 134 S.Ct. 584, 588, (2013), the Supreme Court recently reiterated that "[c]ircumstances fitting within the Younger doctrine . . . are 'exceptional.'" The court "cautioned . . . that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and

should not refus[e] to decide a case in deference to the States." *Id.* (internal quotation marks omitted). This case does not fall within the type of cases catalogued by the Supreme Court in <u>Sprint</u> as fitting within the <u>Younger</u> doctrine – "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions," *id.* (internal quotation marks omitted), or within the narrow category of private party cases that has been identified by the Tenth Circuit – child custody cases. Therefore "the general rule governs: '[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Id.* (<u>quoting Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817(1976)). Defendant's motion to dismiss plaintiff's first cause of action on the ground of <u>Younger</u> abstention will be denied.

<u>Second Cause of Action – Conspiracy to interfere with freedom of intimate association</u>

In his second cause of action, plaintiff alleges that all defendants conspired to intentionally interfere with his freedom of association in violation of his First, Fifth and Fourteenth Amendment rights.

The City initially argues that plaintiff's conspiracy claim must be dismissed to the extent the underlying constitutional right is asserted under the First Amendment, because the constitutionally protected right to the freedom of intimate association is a liberty interest protected by the Fifth and Fourteenth, rather than the First Amendment. It then contends that plaintiff's alleged relationship with Heather White was not the type of highly personal relationship afforded constitutional protection. It is unnecessary to address these issues

because there is a more fundamental problem with plaintiff's claim, which the court raises *sua sponte*. Plaintiff has failed to sufficiently allege that the City, acting through Devereaux, Ahlgren and Breland,[7] engaged in a conspiracy with defendants Kyle White, Tontz and Griffin to interfere with plaintiff's right of intimate association.

"[A] federal conspiracy action brought under [ § 1983] requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective."[8] <u>Brooks v. Gaenzle</u>, 614 F.3d 1213, 1227-28 (10th Cir. 2010). "[A] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants because [c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* at 1228 (internal quotation marks omitted). A plaintiff must also allege facts that show a constitutional violation. <u>Dixon v. City of Lawton</u>, 898 F.2d 1443, 1449 (10th Cir.1990) (To recover on a conspiracy claim under § 1983, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."). As

---

[7]*While "[s]ection 1983 does not authorize liability under a theory of respondeat superior," <u>Schneider v. City of Grand Junction Police Dep't</u>, 717 F.3d 760, 767 (10th Cir. 2013) (internal quotation marks omitted), municipal liability may be imposed on the basis that a City employee was a final policy maker for the City. <u>Beedle v. Wilson</u>, 422 F.3d 1059, 1068 (10th Cir. 2005) ("[M]unicipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered."). The court assumes that the city manager and police chief are final policy makers for the City of Guthrie.*

[8]*The persons also must have acted under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 46 (1988). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50. The non-City employees who are sued as private citizens, "can be held liable under § 1983 only if [they were] "willful participant[s] in joint action with the [City] or its agents." <u>Beedle</u>, 422 F.3d at 1071.*

applied here, that means plaintiff must allege facts demonstrating that each defendant acted with the intent to deprive plaintiff of his protected relationship with Heather White.[9] <u>Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.</u>, 768 F.2d 1186, 1190 (10th Cir. 1985) ("[A]n allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983."). *See* <u>Kerr v. Lyford</u>, 171 F.3d 330, 340 (5th Cir. 1999) ("The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants <u>with the specific intent to violate the aforementioned right</u>.) (emphasis added), *abrogated on other grounds*, <u>Castellano v. Fragozo</u>, 352 F.3d 939 (5th Cir.2003). This plaintiff has not done. He has pleaded facts from which it might reasonably be inferred that defendants Kyle White, Jill Ochs and, possibly, Ann Griffin intended to interfere with his relationship with Ms. White. However, plaintiff has not alleged facts that plausibly show that when the municipal actors – defendants Devereaux, Breland and Ahlgren – in response to White, Ochs and Griffin's complaint's about White's arrest, conducted the investigation, convened the Disciplinary Review Board and eventually terminated plaintiff, they took those actions (and the others that were alleged) with the specific intent of depriving plaintiff of his protected relationship with Heather White. Devereaux, Breland and Ahlgren may have agreed to "pursue employment actions against [plaintiff]" that would have the effect of interfering with that relationship, but that is not enough. Their conduct must have been <u>directed</u> at that

---

[9]*The court assumes for purposes of the motion that plaintiff's relationship with Heather White is entitled to constitutional protection.*

relationship. <u>Trujillo</u>, 768 F.2d at 1190.

As plaintiff has failed to allege the underlying constitutional violation, which must be pleaded to state a § 1983 conspiracy claim based on interference with the right of intimate association, <u>Dixon</u>, 898 F.2d at 1449, his second cause of action will be dismissed. Plaintiff has requested leave to amend both in his response brief and by separate motion. The court has considerable doubt whether this deficiency can be cured by amendment. The complaint reflects a determined effort by accomplished counsel to state a factual basis for the necessary allegations of conspiracy – however forced they may seem as a practical matter – and it appears unlikely that there is much more to be said. However, as the determinative issue here was addressed largely sua sponte, leave to amend will be granted.

<u>Third Cause of Action</u>

Plaintiff's third cause of action is based on a policy which defendants allegedly cited as a basis for his discharge. The policy allegedly "precluded a police officer from directing the arrest of a person when said police officer was engaged to marry the ex wife of the arrestee." Doc. #1-2, p. 25. Plaintiff alleges defendants asserted this policy as a pretext to disguise the real reason for his discharge but that

> [t]o the extent that this court, and/or the trier of fact, concludes that such a rule actually existed, Plaintiff would plead, in the alternative, that such a rule is overly broad, arbitrary and capricious in violation of the substantive due process clause of the Fifth and Fourteenth Amendments inasmuch as it seeks to allow governmental action interfering with the fundamental right of freedom of association.

Doc. #1-2, p. 26.

This claim will be dismissed. Assuming the policy exists, plaintiff has not alleged facts demonstrating that the policy, on its face, violates the substantive due process clause of the Fifth and Fourteenth Amendments. He has not alleged facts showing a plausible connection between the policy – a ban on arresting the former spouse of one's fiancee – and the right of intimate association. Leave to amend will not be granted, as the court concludes amendment would be futile.

Fifth Cause of Action – Substantive Due Process refusal to reinstate plaintiff

Plaintiff's fifth cause of action is based on the City's alleged refusal to reinstate plaintiff, which he claims is a violation of his substantive due process rights. The City argues that this claim is based on its failure to seek relief from the arbitrator's claim, despite its right to do so. Because it has now filed a petition to vacate the arbitration decision, the City asserts the claim should be dismissed. As the court determined previously, when discussing whether it should abstain pursuant to Younger, there is no reason for it to defer to the state court proceeding.[10] The City's motion to dismiss this claim will be denied.

In sum, the City's partial motion to dismiss will be granted in part and denied in part. The motion will be denied with respect to plaintiff's first and fifth causes of action. Plaintiff's second and third causes of action will be dismissed. Plaintiff will be granted leave to amend his § 1983 conspiracy claim, if he can do so.

Serenhia Breland, Jim Ahlgren and Damon Devereaux' Partial Motion to Dismiss

---

[10]*The City waited to file its petition in state court until more than a year after the arbitration decision was issued and more than a year after it had refused to reinstate plaintiff.*

Defendants Breland, Ahlgren, and Devereaux seek the dismissal of plaintiff's second and eighth causes of action. As the court has concluded plaintiff's §1983 conspiracy claim fails to state a claim and should be dismissed, it will proceed to consider defendants' arguments pertaining to his eighth cause of action.

In his eighth cause of action, plaintiff alleges that defendants deprived him of fundamental liberty and property interests without due process of law in violation of Article 2, §§ 2 and 7 of the Oklahoma Constitution by conspiring to interfere with his intimate relationship with Heather White, by causing his discharge, by preventing him from entering onto City public property and barring him from City property, and by depriving him of procedural due process. Plaintiff asserts that he seeks in this cause of action "to recover solely from individual officers for conduct which is alleged to have been 'outside the scope of employment.'" Doc. #42, p. 28.

Section 2, titled "Inherent rights," provides that "All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry." Section 7 provides that "No person shall be deprived of life, liberty, or property, without due process of law." Defendants assert that neither constitutional provision provides a private cause of action and that the Oklahoma Supreme Court has limited the applicability of <u>Bosh v. Cherokee Cnty. Bldg. Auth.</u>, 305 P.3d 994, 1001 (2013).[11]

---

[11]*In <u>Bosh</u> the Oklahoma Supreme Court recognized a private right of action against a governmental entity for excessive force based on Art. 2, § 30 of the Oklahoma Constitution, notwithstanding the limitations of the Oklahoma Governmental Tort Clams Act, 51 Okla. Stat. §§151 et seq.*

Plaintiff responds that he is not relying on <u>Bosh</u>, but on another provision of the Oklahoma Constitution, Article 2, § 6, which requires that the state courts "shall be open to every person" and "certain remedy afforded for every wrong," citing <u>Woody v. State, ex rel. Dep't of Corr.</u>, 833 P.2d 257 (1992).[12] He asserts that "the Oklahoma statutes are clear that a violation of any right entitles Plaintiff to recover damages" and that "[t]his cause of action is one sounding in tort." Doc. #42, p. 29 & n.5.

While plaintiff denies he is asserting a <u>Bosh</u> claim, he has not identified any other plausible basis for the multiple claims he is attempting to allege under the state constitution. The Oklahoma courts have wrestled with the question of whether a private right of action should be recognized for particular claims. *E.g.,* <u>GJA v. Oklahoma Dep't of Human Servs.</u>, 347 P.3d 310 (Okla.Civ.App. 2015). That exercise is plainly inconsistent with plaintiff's suggestion that Art. 2, § 6 is a basis for tort recovery as to <u>all</u> constitution-based claims. There must be some recognized basis for recognizing a private right of action and, on the current submissions, only <u>Bosh</u> is potentially applicable.

The Oklahoma Supreme Court has now made it explicitly clear that <u>Bosh</u> is not some wide-ranging authorization of private rights of action for all claims arguably arising under the Oklahoma Constitution. Rather, <u>Bosh</u>'s rationale is limited to those circumstances where a plaintiff has "no other avenue" for recovering for his or her claimed constitutional injuries.

---

[12] *Plaintiff's reliance on* <u>Woody v. State</u>, *833 P.2d 257 (Okla.1992) is misplaced, as in it the Oklahoma Supreme Court dealt with the application of the prisoner mailbox rule to pro se prisoners' appellate filings due to concerns of access to the courts.*

Perry v. City of Norman, 341 P.2d 689, 692-93 (Okla. 2014).[13]  Plaintiff has not made any such showing here, even assuming he has made out a constitutional violation.  Federal courts are, in general, reluctant to expand state law in the absence of clear guidance from the state's highest court.  Schrock v. Wyeth Inc., 727 F.3d 1273, 1284 (10th Cir. 2013).  There is none suggesting the Oklahoma courts would recognize a private right of action in these circumstances.

Plaintiffs claims based on claimed violations of the Oklahoma Constitution (eighth cause of action) will be dismissed.  Leave to amend is not granted as amendment would be futile.

Gary Haddock and Jonathan Williams' Motion to Dismiss

Defendants Haddock and Williams seek dismissal of all four claims plaintiff has asserted against them in his second, sixth, seventh and eighth causes of action.

The court has concluded plaintiff's §1983 conspiracy claim fails to state a claim and should be dismissed, and the deficiencies that resulted in the dismissal of plaintiff's eighth cause of action as alleged against defendants Breland, Ahlgren, and Devreax similarly warrant its dismissal as to defendants Haddock and Williams.  The court will therefore

_____

[13]*The Oklahoma Court of Civil Appeals has also recently addressed the scope of* Bosh, *suggesting that its rationale extends beyond just excess force cases and that its reach is somehow determined by a "gatekeeping" function engaged in by the trial court.* GJA v. Okla. Dep't of Human Servs., *347 P.3d 310 (Okla.Civ.App. 2015). Although decided after* Perry, *the* GJA *opinion does not mention* Perry, *does not recognize* Perry's *limitation of the* Bosh *rationale, and appears to ultimately base its conclusion on the presence or absence of a constitutional violation, rather than on the issue of whether* Bosh *affords a basis for a remedy for any substantive violation otherwise established. In any event,* GJA *is not persuasive authority for concluding that* Bosh *would authorize the Oklahoma constitutional claims which plaintiff asserts here.*

proceed to consider the sufficiency of plaintiff's sixth and seventh causes of actions against defendants Haddock and Williams.

Plaintiff alleges in his sixth cause of action that defendants Haddock and Williams deprived him of property without due process when they, as members of the Disciplinary Review Board during the pretermination proceedings, gave as a reason for his termination his "unfit for employment" personality and temperament, without giving him prior notice of that charge. Plaintiff alleges that the defendants 'were biased to the extent that the doctrine of 'cats paw' and rubber stamped' imputes the intent of Breland, Devereaux and Ahlgren to them." Doc. #1-2, p. 30.

Defendants Haddock and Williams argue that plaintiff has not alleged that they personally acted with the intent to deprive him of his constitutional rights. They also contend that his attempt to hold them liable under a cat's paw or rubber stamping theory fails because the principle applies when the decision maker carries out the discriminatory animus of a subordinate. Plaintiff responds that "[t]o the extent that the Disciplinary Review Board was making a decision on discharge they were effectively superior to Devereaux and Ahlgren in terms of recommending discipline." Doc. #43, p. 28. He also asserts that because of "the control Devereaux and Ahlgren had over" Haddock and Williams, their intent could be imputed to Haddock and Williams. *Id.* at p. 29.

The cat's paw theory is not applicable in these circumstances. As recently explained by the Tenth Circuit in Llamas v. QC Fin. Servs., Inc., 2015 WL 4175020, at *7 (10th Cir. July 13, 2015), "[c]at's paw" liability is appropriate when "a biased subordinate, who lacks

decision making power, uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." That is the reverse of what plaintiff has alleged occurred here. Plaintiff also cites no authority for the proposition that intent can be imputed on the basis that one individual is under another's control. Plaintiff's sixth cause of action will be dismissed as to Haddock and Williams.

In his seventh cause of action plaintiff alleges he had " a contract, employment and/or business relation with the City of Guthrie," that defendants Haddock and Williams knew or should have known of its existence and that they "interfered with that relation and/or induced the Third party to terminate Plaintiff, based upon false and malicious charges and allegations." Doc. 1-2, pp. 31-32. Defendants assert that to prevail under Oklahoma law on a claim for tortious interference with a contractual or business relationship a plaintiff must prove: " (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." Wilspec Technologies, Inc. v. DunAn Holding Grp., Co., 204 P.3d 69, 74 (Okla. 2009). They contend that plaintiff has, throughout the complaint, alleged they were liable as the result of the wrongful motivations of others and he has not pleaded that they acted maliciously or wrongfully. They assert it is inconsistent for him to allege in some causes of action that they should be held liable under a "cat's paw" theory, but then claim in another that they personally acted maliciously or wrongfully.

Plaintiff responds that he has adequately pleaded a malicious interference with

employment claim.  He contends "these Defendants interjected into the proceedings a false, and unsupported ex parte basis for discharge" –  the "unsupported claim that Plaintiff's personality and/or temper rendered him unfit for employment."  Doc. #43, p. 29 (quoting Complaint, Doc. #1-2 ¶36y).

The federal pleading rules permit a plaintiff to plead alternate and inconsistent claims. However, a plaintiff must plead some facts to support them.  Plaintiff has not alleged facts in his seventh cause of action from which it can reasonably be inferred that Haddock and Williams acted with the required wrongful intent to interfere with plaintiff's employment relationship with the City.  The claim will be dismissed as to these two defendants.

The motion to dismiss filed by defendants Haddock and Williams will be granted. Plaintiff's second, sixth, seventh and eighth causes of action will be dismissed as to defendants Haddock and Williams.

Ann Griffin's Motion to Dismiss

Defendant Griffin seeks the dismissal of the two claims plaintiff has asserted against her in his second and seventh causes of action.  She initially argues that the § 1983 conspiracy claim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because plaintiff has not alleged she was acting under color of law.  West. v. Atkins, 487 U.S. 42, 46 (1988) (acting under color of law is "a jurisdictional requisite for a § 1983 action").  Defendant Griffin notes that, although plaintiff refers to her as a state senator in the complaint, he sued her in her individual capacity and all of the allegations that

pertain to her relate to actions she took as a private citizen.[14] Ms. Griffin then contends that,

to the extent plaintiff attempts to subject her to liability under § 1983 on the ground that she,

along with defendants White and Tontz, conspired with City officials, the allegations are too

conclusory to state a claim.[15] The court agrees that plaintiff's allegations of conspiracy are

deficiently pleaded, for the reasons stated earlier when discussing the claim in conjunction

with the City's motion to dismiss.[16] Plaintiff's § 1983 conspiracy claim will be dismissed

as to defendant Griffin for failure to state a claim.[17] That leaves plaintiff's claim against Ms.

Griffin for intentional interference with a business or profession.

_____

[14]*Plaintiff disputes that he has not alleged Ms. Griffin acted under color of law, citing paragraph 12 of the complaint." Doc. #1-2, ¶12. While the § 1983 conspiracy claim is being dismissed on another ground, the court agrees with Ms. Griffin that plaintiff failed to plead that her actions were taken "under color of state law." See* Beedle, *422 F.3d at 1074 ("[I]t is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state. [I]t is the plaintiff's burden to plead, and ultimately establish, the existence of a real nexus between the defendant's conduct and the defendant's badge of state authority in order to demonstrate action was taken under color of state law.") (internal quotation marks omitted).*

[15]*Ms. Griffin, like several of the other defendants, also challenges plaintiff's conspiracy claim on the basis that his relationship with Heather White, at the time of the asserted interference, was not the type of relationship entitled to constitutional protection. As the court stated previously, because the claim is being dismissed on another ground, it is unnecessary to address that issue or to determine the constitutional basis for the right of intimate association .*

[16]*In his response to Ms. Griffin's motion, plaintiff does not address her argument that his conspiracy allegations are inadequate, other than to state that the "Petition in this case clearly reflects a conspiracy, as well as joint action, where there is substantial cooperation and agreement as to objectives between Defendants Griffin, White and Tontz and state actors Breland, Ahlgren and Devereaux." Id. at p. 26.*

[17]*Defendant Griffin also moved to dismiss plaintiff's § 1983 conspiracy claim on the basis of qualified immunity. Defendants Breland, Ahlgren and Devereaux asserted qualified immunity as a defense to the claim if the court determined plaintiff had a protected constitutional right in a non-marital relationship. As the court concluded the claim was inadequately pleaded, it did not address the issue of qualified immunity.*

Defendant Griffin contends the claim is barred by the Oklahoma Citizens Participation Act ("OCPA"), 12 Okla. Stat. §§ 1430-1440. Plaintiff responds that "the OCPA merely establishes procedures for determining a claim of free speech protection." Doc. #44, p. 31. He contends it does not supplant the Federal Rules of Civil Procedure. The court agrees.

The OCPA provides a special procedure governing a motion to dismiss filed in a legal action that is "based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association." 12 Okla. Stat. § 1432. An almost identical Act, the Texas Citizens' Participation Act, was described by the Texas Court of Appeals as being intended to "'protect[] citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern' by providing 'a special procedure for the dismissal of such suits.'" Ruder v. Jordan, 2015 WL 4397636, at *2 (Tex. App. July 20, 2015) (emphasis added) (quoting In re Lipsky, 460 S.W.3d 579, 84 (Tex. Apr. 24, 2015)). It allows for prompt disposition of a motion to dismiss, but does not otherwise provide any substantive rights. As the act is procedural in nature, it is inapplicable in federal court and does not provide a basis for dismissing plaintiff's tort claim. *See generally* Boyd Rosene & Associates, Inc. v. Kansas Mun. Gas Agency, 174 F.3d 1115, 1118 (10th Cir. 1999). Further, if defendant Griffin was correct that the statute provided substantive rights, then it still would not apply here because, as she notes in her reply brief, the OCPA became effective on November 1, 2014, which is after the events underlying plaintiff's claims occurred.

Defendant Griffin also contends that plaintiff's seventh cause of action should be dismissed because he failed both to allege facts that would "amount to impropriety or

unfairness" or to specify which defendants acted unfairly or improperly. Doc. #29, p. 29. Plaintiff's intentional interference claim against defendant Griffin is based on her involvement in a conspiracy with City employees who allegedly wrongfully terminated plaintiff. As plaintiff's conspiracy claim has been dismissed, this claim also fails.

The motion to dismiss filed by defendant Griffin will be granted and plaintiff's second and seventh causes of action will be dismissed as to defendant Griffin.

Jill Ochs Tontz's and Kyle White's Motions to Dismiss

Defendants Tontz and White also seek the dismissal of plaintiff's second and seventh causes of action. They have filed almost identical motions to dismiss and make essentially the same arguments as those asserted by defendant Griffin. Their motions will be granted for the same reasons the court granted Ms. Griffin's motion to dismiss. Plaintiff's second and seventh causes of action will be dismissed as to defendants Tontz and White.

Conclusion

The partial motion to dismiss [Doc. #16] filed by the City of Guthrie is **GRANTED** in **PART** and **DENIED** in **PART**. It is **DENIED** as to the first and fifth causes of action. The partial motion to dismiss [Doc. #17] filed by defendants Breland, Ahlgren, and Devereaux is **GRANTED**. The motions to dismiss filed by defendants Haddock and Williams [Doc. #18], Griffin [Doc. #29], Tontz [Doc. #31], and White [Doc. #30] are **GRANTED**. Plaintiff's second, third, seventh, and eighth causes of action are **DISMISSED** as to all defendants. The sixth cause of action is **DISMISSED** as to defendants Haddock and Williams.

Plaintiff has filed a motion to amend his complaint [Doc. #55], which the court **GRANTS** as to all the claims that are dismissed except for the third and eighth causes of action. Leave to amend those claims is **DENIED** as amendment would be futile.

If plaintiff decides to amend any of the dismissed claims, the amended complaint must be filed by **September 1, 2015**.

**IT IS SO ORDERED**.

Dated this 18th day of August, 2015.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE